IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GEORGE H. SIMPSON,<br>*Plaintiff*,<br><br>v.<br><br>THE UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, KENITH ADCOX, Chief of Police, in his official and individual capacities, KRISTOPHER MCGILL, Sergeant, in his individual capacity, & DOES 1–10,<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. _____<br><br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

**COMES NOW PLAINTIFF** George Simpson, who does now hereby submit his Original Complaint, and for good cause would show this Honorable Court as follows:

### I. INTRODUCTION

1. This is an action for race discrimination and retaliation in violation of 42 U.S.C. § 1981. Plaintiff George H. Simpson, an African American former police officer employed by Defendant University of Texas Medical Branch Police Department ("UTMB PD"), was subjected to disparate disciplinary treatment and ultimately terminated because of his race and because he opposed racially discriminatory practices.

2. Defendant enforced its body-worn camera ("BWC") policy selectively, imposing termination on Plaintiff while granting leniency, advancement, and preferential treatment to a similarly situated white cadet who committed the same violations. Plaintiff further suffered retaliation after reporting discriminatory conduct and providing evidence of misconduct, including audio recordings implicating senior command staff.

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under 42 U.S.C. § 1981 & 42 U.S.C. § 1983.

4. This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in the Southern District of Texas, Houston Division, under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this District and Defendant conducts business and employs personnel here.

## III. PARTIES

6. Plaintiff George H. Simpson is an individual residing in Galveston County, Texas. At all relevant times, Plaintiff was employed as a Public Safety Officer by UTMB.

7. Defendant The University of Texas Medical Branch at Galveston ("UTMB") is a component institution of the University of Texas System and an arm of the State of Texas. UTMB operates and controls the UTMB Police Department and was Plaintiff's employer at all relevant times. Process may be served upon the Texas Secretary of State, which may accept service for state agencies, located at P.O. Box 12079, Austin, TX 78711-2079.

8. Defendant Kenith Adcox was, at all relevant times, the Chief of Police for UTMB Police Department. He exercised final policymaking authority with respect to officer discipline, investigations, and termination decisions. He is sued in his official capacity for

prospective injunctive and declaratory relief and in his individual capacity for damages. He may be served at his place of residence, or wherever he may be found.

9. Defendant Kristopher McGill was, at all relevant times, a Sergeant with UTMB Police Department and was directly involved in the disciplinary actions taken against Plaintiff. He is sued in his individual capacity. He may be served at his place of residence, or wherever he may be found.

10. Defendants Does 1–10 are unknown UTMB officials and policymakers who participated in, approved, or ratified the discriminatory and retaliatory conduct alleged herein. Plaintiff will amend this Complaint to identify these Defendants when their identities are discovered. They may be served at their places of residence, or wherever they may be found.

## IV. FACTUAL ALLEGATIONS

**A. Statutory Enforcement Framework**

11. Defendants acted under color of state law at all relevant times.

12. Plaintiff's claims for race discrimination and retaliation arise under 42 U.S.C. § 1981 and are enforced through 42 U.S.C. § 1983. See *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731–33 (1989); *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 462–63 (5th Cir. 2001).

13. Plaintiff seeks prospective injunctive and declaratory relief against Defendant Adcox in his official capacity pursuant to *Ex parte Young*, 209 U.S. 123 (1908), to remedy ongoing and future violations of federal law.

**B. Plaintiff's Employment**

14. Plaintiff was employed by UTMB PD for approximately six years and consistently performed his duties in a satisfactory manner.

15. Plaintiff was subject to UTMB PD's BWC policy, which required officers to properly activate and use department-issued body worn cameras.

### C. Disparate Enforcement of the BWC Policy

16. In August 2024, UTMB PD began disciplinary proceedings against Plaintiff for alleged violations of the BWC policy.

17. Plaintiff was written up, relieved of duty, placed on administrative leave, and ultimately terminated on September 6, 2024, allegedly for insubordination related to the BWC policy.

18. At the same time, a white cadet committed the same BWC policy violations, including violations while on probation.

19. Unlike Plaintiff, the white cadet received a brief suspension, was promoted, received a pay increase, and was sent to the police academy.

20. UTMB PD leadership, including senior command staff, falsely represented that all personnel received identical discipline for the same violations.

21. Audio recordings and documentary evidence later revealed that numerous officers violated the BWC policy and that senior leadership knowingly misrepresented the scope of violations.

### D. Plaintiff's Protected Opposition and Retaliation

22. Plaintiff challenged the unequal enforcement of the BWC policy and raised concerns of racial bias.

23. After Plaintiff reported the existence of recordings and discriminatory conduct to Internal Affairs, UTMB PD failed to meaningfully investigate the evidence.

24. On information and belief, Internal Affairs closed its investigation without reviewing the recordings, despite being notified of their existence.

25. UTMB PD subsequently refused to consider the recordings during Plaintiff's appeal process and denied Plaintiff a meaningful opportunity to be heard, in contravention of administrative policy for the Department.

26. Plaintiff's termination and the Defendants' refusal to consider exculpatory and corroborating evidence were causally connected to his opposition to discrimination and his disclosure of misconduct.

**E. Policy, Custom, and Practice (*Monell* Liability)**

27. Defendant's discriminatory and retaliatory actions were taken pursuant to official policies, longstanding customs, or practices of UTMB PD.

28. Senior command staff, including the Chief and other high-ranking officers, exercised final policymaking authority with respect to discipline, investigations, and promotions.

29. These policymakers knowingly enforced departmental policies in a racially disparate manner, misrepresented material facts regarding disciplinary uniformity, and ratified discriminatory outcomes.

30. Defendant maintained a custom of disproportionately disciplining Black and Hispanic officers while excusing or rewarding similarly situated white officers.

31. Defendant further maintained a custom of suppressing or ignoring evidence of discrimination once reported, including closing Internal Affairs investigations without reviewing known evidence.

32. Such policies, customs, and ratification were the moving force behind the violation of Plaintiff's federally protected rights. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

33. Plaintiff challenged the unequal enforcement of the BWC policy and raised concerns of racial bias.

34. After Plaintiff reported the existence of recordings and discriminatory conduct to Internal Affairs, UTMB PD failed to meaningfully investigate the evidence.

35. Internal Affairs closed its investigation without reviewing the recordings, despite being notified of their existence.

36. UTMB PD subsequently refused to consider the recordings during Plaintiff's appeal process and denied Plaintiff a meaningful opportunity to be heard.

37. Plaintiff's termination and the refusal to consider exculpatory and corroborating evidence were causally connected to his opposition to discrimination and his disclosure of misconduct.

## V. CAUSES OF ACTION

A.     **ENFORCEMENT OF RIGHTS UNDER 42 U.S.C. § 1981 VIA 42 U.S.C. § 1983**

38. Plaintiff incorporates by reference all preceding paragraphs, *in haec verba*.

39. At all relevant times, Defendants acted under color of state law.

40. Section 1981 guarantees all persons the same right to make and enforce contracts, including the enjoyment of all benefits, privileges, terms, and conditions of employment, without regard to race.

41. Pursuant to *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731–33 (1989), and controlling Fifth Circuit precedent, Plaintiff enforces his § 1981 rights against Defendants through 42 U.S.C. § 1983.

42. Defendants, through their policies, customs, acts, and omissions, deprived Plaintiff of rights secured by § 1981, and in violation of § 1983.

B.     **RACE DISCRIMINATION under 42 U.S.C. §§ 1981 and 1983**

43. Plaintiff incorporates by reference all preceding paragraphs, *in haec verba*.

44. Section 1981 guarantees all persons the same right to make and enforce contracts, including the enjoyment of all benefits, privileges, terms, and conditions of employment, without regard to race. 42 U.S.C. § 1981(a). The Fifth Circuit has held that § 1981 prohibits intentional race discrimination in public employment and is enforceable against state actors through 42 U.S.C. § 1983. See *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 462–63 (5th Cir. 2001); *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 339 (5th Cir. 2003).

45. To state a claim for race discrimination under § 1981, a plaintiff must plausibly allege that (a) he is a member of a protected class, (b) he suffered an adverse employment

action, and (c) the adverse action was taken because of race. See *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 403 (5th Cir. 2021).

46. Defendant intentionally discriminated against Plaintiff on the basis of race by disciplining and terminating him more harshly than a similarly situated white cadet who committed the same BWC policy violations. Disparate discipline of similarly situated employees is probative of discriminatory intent under Fifth Circuit law. See *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007).

47. Plaintiff and the white cadet were subject to the same policies, engaged in the same misconduct, and were evaluated by the same decisionmakers, yet received materially different outcomes, satisfying the Fifth Circuit's similarly-situated standard at the pleading stage. See *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259–61 (5th Cir. 2009).

48. Race was a motivating factor and a but-for cause of Defendant's decision to terminate Plaintiff, as required for § 1981 liability. Defendant's asserted justification of "insubordination" is pretextual where identical or more serious policy violations by a white comparator were excused or rewarded. Pretext may be shown through false explanations, shifting rationales, and unequal discipline. See *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412–13 (5th Cir. 2007). See *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014–15 (2020).

49. Defendant's actions violated Plaintiff's rights under 42 U.S.C. § 1981.

[ *this portion left blank* ]

### C.     RETALIATION under 42 U.S.C. §§ 1981 and 1983

50. Plaintiff incorporates by reference all preceding sparagraphs, *in haec verba*.

51. The Fifth Circuit recognizes retaliation claims under § 1981 where an employee suffers adverse action for opposing race discrimination. See *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 339–40 (5th Cir. 2003).

52. Plaintiff engaged in protected activity by opposing racially discriminatory enforcement of departmental policy and by reporting evidence of racial bias and misconduct to Internal Affairs. Opposition to discriminatory practices constitutes protected activity under § 1981. See *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 476 (5th Cir. 2005).

53. Defendant subjected Plaintiff to materially adverse employment actions, including termination and the denial of a meaningful disciplinary appeal, actions that would dissuade a reasonable employee from engaging in protected activity. See *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), as applied in the Fifth Circuit.

54. A causal connection exists between Plaintiff's protected activity and Defendant's adverse actions, supported by close temporal proximity and Defendant's refusal to consider Plaintiff's evidence after it was disclosed. See *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

55. Defendant's retaliatory conduct violated Plaintiff's rights under 42 U.S.C. § 1981, and was executed in their authority under color of law, pursuant to 42 U.S.C. § 1983.

## VI. DAMAGES AND IMMUNITY ALLEGATIONS

56. Plaintiff seeks compensatory damages, back pay, front pay, and other make-whole relief against Defendants Adcox and McGill in their *individual* capacities.

57. Plaintiff seeks prospective injunctive and declaratory relief against Defendant Adcox in his *official* capacity pursuant to *Ex parte Young*, 209 U.S. 123 (1908).

58. Plaintiff does not seek monetary damages against UTMB or against any Defendant in an official capacity where such relief would be barred by the Eleventh Amendment.

59. To the extent Defendants assert qualified immunity, Plaintiff pleads that Defendants violated clearly established statutory rights under 42 U.S.C. § 1981 & 42 U.S.C. § 1983, including the right to be free from race-based disparate discipline and retaliation for opposing race discrimination, as recognized by longstanding Fifth Circuit precedent.

60. Defendants' conduct was objectively unreasonable in light of clearly established law.

61. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered:

   a. Lost wages and employment benefits;

   b. Loss of future earning capacity;

   c. Emotional distress and mental anguish;

   d. Damage to professional reputation.

## VII. EXEMPLARY DAMAGES

62. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to exemplary damages under applicable law.

## VIII. JURY DEMAND

63. Plaintiff demands a trial by jury on all issues so triable, and shall pay all costs associated therewith as directed by the Court.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in favor of Plaintiff;

B. Award compensatory damages;

C. Award exemplary damages;

D. Award costs and reasonable attorneys' fees;

E. Award pre-judgment and post-judgment interest;

F. Grant all other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

DUMASNEEL
1800 West Loop South, Suite 2100
Houston, Texas 77027
(713) 462-0993
eservice@dumasneel.com

By: /s/ Julian Frachtman
H. Julian Frachtman | Texas Bar No. 24087356
jfrachtman@dumasneel.com

**Attorney for Plaintiff**